IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-CR-144-JHP |
| ) | |
| ISAAC CLINTON ALLEN, a/k/a ) | |
| "Issac Clinton Allen," a/k/a ) | |
| "Prentice Williams," ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant, Isaac Clinton Allen, is charged in a two count indictment with two firearm violations. Allen has filed a motion seeking to suppress all evidence seized from his residence located at 3080 East 71st Street, Tulsa, Oklahoma on June 15, 2006. The Government opposes the Defendant's motion. On September 26, 2006, a hearing was conducted on Defendant's motion. Having heard the evidence presented and having reviewed all of the briefs regarding the Defendant's Motion to Suppress, this Court concludes Defendant's Motion should be denied.

### I. Facts regarding seizure

On June 9, 2006, Tulsa Police Officer Anthony First appeared before a Judge of the Tulsa County District Court and, after being placed under oath, signed an

affidavit requesting a search warrant be issued authorizing the search of a residence commonly known as 3080 E. 71st St. within the City and County of Tulsa, Oklahoma. The affidavit indicates, on June 3, 2006, during a traffic stop[1] on a burnt-orange Cadillac Escalade pickup two individuals gave

> information about a large amount of illegal drugs and drug proceeds that were being stored and sold/distributed from the address from a house close to 71st and S. Harvard. Both individuals stated to officers that the referenced house was a "gathering point" for members of the "Crips" gang.[2] These individuals went on to state that the people who lived in the house were known to store and distribute illegal drugs as well as finance many of the luxury items that these gang members are often seen with such as expensive cars, clothing and jewelry. These individuals also stated that the money needed to pay the bonds of arrested gang members was coming from this house.
>
> Through further investigation, the above referenced house was identified as 3080 E. 71st St. within the City and County of Tulsa.

Dkt. 16-2, at page 2 (footnote added). At page 3, ¶ numbered 21, the affidavit reveals that the burnt-orange pickup contained four occupants, each of whom denied knowing the names of the other three occupants and that each of the four occupants had no less than $1,000 in cash on their person. A number of Lortab pills, a Schedule III controlled substance were found concealed behind the center console of the backseat

---

[1] The affidavit indicates the traffic stop occurred in the 5900 block of S. Lewis, which the Court would note is approximately 2 miles from the residence located at 3080 E. 71st St.

[2] While this information appears irrelevant to the issue of what, if any, drug activity is occurring at this particular house, the fact the affidavit indicates Officer L. Eberle later "observed six expensive cars parked in front of the residence, several of which he knew from prior contacts to be owned/operated by known gang members," provides some measure of credibility to the information which the affiant had obtained from the confidential informant.

and a passenger of the vehicle had three Ecstacy pills in his right shoe. *Id.*, at p. 3, numbered ¶ 22. The affidavit also indicates that the driver of the burnt-orange pickup provided the officers with a driver's license bearing the name of "Prentice Williams," but it was later learned that driver's true identity was Isaac Allen. *Id.*, at p. 2, numbered ¶ 7.

Next, the affidavit chronicles the extensive criminal history of the defendant which was obtained from a "Triple I" report[3] and details four separate occasions in which Allen gave false information to police concerning his true identity. Officer First admitted he later learned that the arrests discussed in numbered ¶s 9 and 10 of the affidavit were for the same charges. At the time he signed the affidavit, however, Officer First believed these paragraphs were two separate arrests. Additionally, Officer First admitted he did not know that the arrest detailed on page 3 of the affidavit in ¶ numbered 14 was for a parole violation. In addition to revealing the arrests contained in the "Triple I," the affidavit further indicates:

> During the months of June through September, 2005, Det. J. Henderson of the Tulsa Police Department Special Investigations Division received information from several separate CI's all of whom named ALLEN as a source of cocaine, marijuana, and methamphetamine. During his investigation of these claims Det. Henderson interviewed ALLEN in July of this same year. During this interview ALLEN stated to Det.

---

[3]Officer First indicated a "Triple I" report is considered as reliable by law enforcement as a fellow officer giving them information. Thus, Officer First did not attempt to independently confirm any of the information contained in the "Triple I" report concerning the defendant's criminal history because, according to this testimony, he felt the information on "Triple I" was accurate.

3

> Henderson that he had just purchased 11 pounds of crystal methamphetamine from "the Mexicans" for $87,000. At the time of the interview, ALLEN stated that he still owed "the Mexicans" $10,000.

*Id.*, at p. 3, in an unnumbered ¶ immediately following ¶ numbered 16 and preceding ¶ numbered 18.

The affidavit also indicates that on May 27, 2006, another "confidential informant" reported observing 20 cars arrive and leave the residence between 4 and 5 a.m. The informant indicated each car stayed for only a few minutes. The affiant stated, based upon his training and experience that this type of traffic was consistent with distribution of a recently received shipment of illegal drugs. *Id.*, at p. 3, in an unnumbered ¶ immediately following ¶ numbered 18 and preceding ¶ numbered 20. The affidavit continues by indicating that during two separate periods of surveillance conducted within the past 48 hours, the affiant has observed a high volume of short term vehicle traffic at this residence and again states, based upon the affiant's experience, this "traffic is often consistent with the sales of illegal drugs." *Id.*, p. 5, at numbered ¶ 29.

Additionally, on June 7, 2006, officers stopped a vehicle in the driveway of the suspect residence in which a passenger was identified as an occupant of the residence. During a search of the vehicle officers recovered 1/4 lb. of marijuana within access to both the driver and the passenger. *Id.*, at p. 3, numbered ¶ 22.

Finally, Officer First's affidavit contains information indicating officers believed Isaac Allen was a resident of the house, including the fact the vehicle Allen was stopped in on June 3, 2005, appeared to belong to the house as opposed to belonging to a visitor and the utilities for this house were in the name of "Prentice Williams." *Id*., at p. 4, numbered ¶ 28. Based upon all of this information, the magistrate judge determined there was probable cause to issue a search warrant. On June 15, 2006, the search warrant was executed upon said residence.

## II.  Legal Analysis

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  Defendant argues police officers gave false and misleading information in the Affidavit for Search Warrant and, therefore, the search warrant and all fruits thereof should be suppressed.  The Government counters that the affidavit contains no deliberate or reckless falsehoods or omissions.  Accordingly, the Government argues the good faith exception to the exclusionary rule should apply and cure any defect in the probable cause supporting the search warrant.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV; *United*

*States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990). The standard to be used for determining probable cause is a common sense one. *United States v. Wicks*, 995 F.2d 964, 972 (10th Cir. 1993), *cert. denied*, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 91993). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993). It requires "only the probability, and not a prima facie showing, of criminal activity. . . . ." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). The determination that this Court must make is whether "the issuing magistrate had a substantial basis for concluding that probable cause existed." *United States v. Corral*, 970 F.2d 719, 726 (10th Cir. 1992). Affidavits submitted in support of a probable cause determination should be judged by the totality of the circumstances standard outlined by the Supreme Court in *Gates*.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure

6

>that the magistrate had a "substantial basis for conclud[ing]" that probable cause existed. (citation omitted)

*Gates*, 462 U.S. 213, 38-39, 103 S.Ct. 2317, 2332. The Fourth Amendment's preference for warrants has led courts to be more inclined to affirm a law enforcement officer's determination of probable cause when it is supported by a search warrant. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); and *United States v. $149,442.43 in United States Currency*, 965 F.2d 868, 872 (10th Cir. 1992). A reviewing court should give great deference to a magistrate judge's determination of probable cause. *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999).

Defendant argues that the affidavit was full of false, misleading and stale information, which if not included within the affidavit would have prevented the magistrate judge from finding probable cause. Additionally, the defendant challenges the reliability of some of the information contained within the affidavit. Specifically, defendant challenges numbered paragraphs 4 and 21 because no information concerning the exact location of the residence where drugs are stored is mentioned and nothing links this to defendant's residence or proves reliability of the information. Further, defendant asserts neither paragraph relates that the defendant was the driver of the vehicle stopped. Next, defendant complains because paragraph 5 does not detail the "further investigation" which was done to link the residence at 3080 East

71st with the information obtained in paragraph 4 and that although paragraph 6 indicates an officer observed expensive vehicles outside the house which he recognized as being owned by "known gang members," nothing in the affidavit relates how the officer knew this information or whether the alleged gang members had anything to do with the illegal drug trade. Reading numbered paragraphs 4, 5, 6, and 7 together, it becomes clear the police attempted to corroborate those details provided by the confidential informants which they could corroborate. Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct. *Gates*, 462 U.S. at 244, 103 S.Ct. at 2355 ("[A]n informant [who] is right about some things . . . [is] more probably right about other facts.") (quoting *Spinelli*, 393 U.S. at 427, 89 S.Ct. At 594 (White, J., concurring)); *see also Albama v. White*, 496 U.S. 325, 331, 110 S.Ct. 2412, 2416-17, 110 L.Ed.2d 301 (1990) (same). In this case, the police received information from two different individuals that "a large amount of illegal drugs and drug proceeds" were being stored and sold/distributed from a house close to 71st and Harvard. Additionally, those two individuals indicated this house was a gathering point for gang members. Through independent investigation, the police were able to identify a residence at 3080 E. 71st St. and could corroborate that vehicles owned and/or operated by known gang

members were congregating at said residence. Thus, the officers could conclude that the two informants were probably right about the drug activity at said residence.

Next, defendant alleges the information in numbered paragraph 10 is inaccurate because the defendant was not arrested again, but was merely taken to the Arkansas Department of Corrections based upon the crime for which he was arrested in numbered paragraph 9. Additionally, defendant complains because no information is contained in the affidavit indicating the disposition of the arrests detailed in numbered paragraphs 11, 12, or 15 or that the arrest in numbered paragraph 14 was actually for a parole violation. Further, defendant asserts the information in paragraph 18 is inaccurate in stating defendant was arrested, on March 7, 2006, for possession of cocaine and outstanding warrants when, in reality, defendant was arrested on outstanding warrants for possession of cocaine. Based upon the testimony at the suppression hearing, this Court finds the defendant failed to establish that information contained within the affidavit was "deliberately false" or made in "reckless disregard" for the truth. *See*, *Franks v. Delaware,* 438 U.S. 154, 155-156 (1978). At most, the mistakes were simply innocent mistakes. Further, the disposition of the charges which were omitted from the affidavit would have had absolutely no impact upon the magistrate's finding of probable cause.

Finally, defendant complains that numbered paragraphs 19, 22 and 29 are misleading because no information is given to advise the magistrate that the "short term traffic" referred to by neighbors in the early morning hours occurred at the end of a "party;" or that the defendant was not in the vehicle which contained the 1/4 pound of marijuana; or about the exact dates and times which the affiant observed short term traffic at the residence.[4]

In reviewing the totality of the information contained with the affidavit, this Court finds sufficient information supports the magistrate's finding of probable cause. In reaching this decision, the Court notes the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6, 98 S.Ct. 1970, 1976-77 & n. 6, 56 L.Ed.2d 525 (1978). In this case, the affidavit established probable cause to believe that the defendant resided at 3080 East 71st St. *See* paragraphs numbered 6, 20, 24, 25, 26, 27 and 28.

Additionally, the affidavit established probable cause to believe that drugs would be present at 3080 East 71st Street. Two different individuals advised officers about a large amount of illegal drugs and drug proceeds being stored, sold or

---

[4]The affidavit does indicate officers observed short term traffic within 48 hours prior to signing the affidavit.

distributed from a residence close to 71st and Harvard. *See* Dkt. 16-2, at p. 2, numbered ¶ 4. Further investigation identified a specific address of 3080 E. 71st St. *Id.*, at numbered ¶ 5. The defendant was stopped for a traffic violation on June 3, 2006, and controlled substances were found in his vehicle. *Id.*, at p. 3, numbered ¶s 20 and 21. On June 7, 2006, a vehicle containing a resident of 3080 E. 71st St. was stopped pulling into the driveway of the residence. This vehicle contained a 1/4 pound of marijuana. *Id.*, at numbered ¶ 22. Additionally, neighbors reported observing, on May 27, 2006, between 4:00 and 5:00 a.m. short term vehicular traffic which arrived at 3080 E. 71st St., stayed for only a few minutes and then left. *Id.*, at ¶ between numbered ¶s 18 and 20. This activity was characterized by the affiant, based upon his training and experience, as being consistent with the distribution of a recently received shipment of illegal drugs. *Id.* Additionally, this information was corroborated by the affiant who on two separate occasions within 48 hours of June 9, 2006, observed "a high volume of short term vehicle traffic at this residence," which was again characterized, based on the affiant's training and experience, as being consistent with the sale of illegal drugs. *Id.*, at p. 5, numbered ¶ 29.

Finally, the affidavit established probable cause to believe the defendant had continuously been involved in drug activities since 1993, *id.*, at pp. 2 - 4, numbered

¶s 4, 9, 12, 16, 17[5], 21, 24, 25[6], 26 and 27, including the defendant's own admission as recently as July of 2005 that he still owed $10,000 to Mexicans for 11 pounds of crystal methamphetamine which he had purchased for $87,000.  *Id*., at p. 3, at ¶ between numbered ¶s 16 and 18.  Clearly, information about high-volume purchases of drugs occurring less than one year before the requested search warrant is not stale when combined with the other information indicating recent drug activity.  *See*, *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986).

When all of the information contained in the affidavit is combined, this Court finds the magistrate judge's had more than ample evidence, without considering numbered paragraphs 10 or 18 and assuming the magistrate knew of the disposition of all the charges which defendant claims should have been added to numbered paragraphs 11, 12, 14, and 15,  to find a fair probability that evidence of drug activities would be found in the residence located at 3080 East 71st St.  Furthermore, even if the affidavit lacked probable cause, this court finds the police officers acted in good faith with reasonable reliance on a facially valid warrant.  *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  Accordingly, the defendant's motion to suppress should be denied.

---

[5] This paragraph is not actually numbered in Dkt. 16-2 but appears between numbered ¶s 16 and 18.

[6] This paragraph is also not numbered in Dkt. 16-2 but appears between numbered ¶s 24 and 26.

It is so ordered on this 29th day of September, 2006.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma